UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH GIBBS, | No.  2:21-cv-02188 TLN AC P |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| A. HERRERA, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendants' motion for summary judgment (ECF No. 48), which plaintiff has opposed (ECF No. 52).

I.    Background

This case proceeds on the operative First Amended Complaint, ECF No. 35[1], which states

---

[1]  The initial complaint was electronically filed on November 24, 2021, ECF No. 1, and was dismissed due to plaintiff's apparent failure to timely pay the filing fee.  ECF No. 17.  Due to an administrative error, plaintiff's payment of the filing fee had not been docketed at the time of payment, and his complaint was also missing the last ten pages.  In an unpublished memorandum decision dated September 12, 2023, the Ninth Circuit remanded the case based on evidence that plaintiff had timely sent payment for the filing fee.  ECF No. 24.  On remand, the court refunded plaintiff's appellate filing fee and granted plaintiff leave to file an amended complaint.  ECF No. 25.  Plaintiff filed the operative First Amended Complaint in this case, verified with his signature, on January 5, 2024.  ECF No. 35; see also ECF No. 36 (order recognizing ECF No. 35 as operative pleading).

1

excessive force claims against four defendants employed as Correctional Officers on Facility C Yard at California State Prison-Sacramento ("CSP-Sacramento") on or about November 19, 2019: (1) A. Herrera; (2) B. McCrary; (3) R. Nappen; and (4) E. Enriquez.  ECF No. 32 (screening order).  Defendants answered the complaint on June 21, 2024.  ECF No. 43. Following the close of discovery, defendants moved for summary judgment.  ECF No. 48. Plaintiff filed an opposition brief with a separate statement of undisputed facts (ECF No. 52), and defendants filed a reply brief with a compendium of the parties' statements of undisputed facts (ECF No. 53).

II.   Allegations of the Amended Complaint

In his Amended Complaint, plaintiff alleges that on November 19, 2019, the defendants entered the law library at CSP-Sacramento at the law librarian's request and ordered plaintiff to leave.  ECF No. 53 at 7.  Plaintiff responded that he needed to get his legal materials back from the librarian first and was advised by defendants that if he did not leave immediately, they would take him out in handcuffs.  Id.  When plaintiff insisted on getting his legal materials back from the librarian a second time, defendants told plaintiff to "turn around and cuff up."  Id.  Plaintiff states that he complied and advised defendant Herrera that he had a permanent waist-chains chrono and therefore he requested to be handcuffed in the front.  Id.  Plaintiff alleges the defendants ignored his request, grabbed his left injured shoulder, and "twisted both of his arms behind Plaintiff's back causing excruciating pain to shoot up and . . . left shoulder and arm."  Id. Plaintiff alleges that defendants "slammed Plaintiff to the floor and placed him in handcuffs."  Id. at 7-8.  While he was on the floor, plaintiff alleges defendant Herrera kneed him in his left injured shoulder multiple times and also "started twisting Plaintiff and bending Plaintiff's wrist over the handcuffs trying to break his wrist."  Id. at 8.  Meanwhile, defendant McCrary was "twisting his right leg causing pain to shoot through his whole entire body."  Id.  Plaintiff claims that defendants ignored his cries and requests for them to stop.  Id.

Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated when defendants Herrara, McCrary, Nappen, and Enriquez used unlawful excessive force against him by "slamming Plaintiff to the floor and defendant Herrera

2

kneeing Plaintiff in his injured left shoulder, bending his wrist over the handcuffs and defendant McCrary twisting his right leg, causing injuries to his left shoulder, both of his knees and wrists." Id. at 9.  As a result of the defendants' conduct, plaintiff alleges he suffered "serious injuries to both of his knees, both of his wrists, and to his left shoulder," as well as "mental and emotional injuries" including "anxiety attacks."  Id.  at 8.

Plaintiff filed administrative grievances against defendants and fully exhausted his excessive force claims against defendants on May 28, 2020.  Id. at 9.  He alleges "the Office of Appeals (Third Level Decision) granted Plaintiff's grievance and declared that the [defendants] did use excessive force against Plaintiff in violation of CDCR's policy[.]"  Id.

III.     Defendants' Motion for Summary Judgment

A.  Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

3

trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On March 17, 2025, defendants served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 48-3; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

B.  Defendants' Arguments

Defendants move for summary judgment on the grounds that defendants did not violate plaintiff's Eighth Amendment rights because (1) their use of force was consistent with CDCR's use of force policy as outlined in the California Code of Regulations and CDCR Department of Operations Manual; (2) defendants used reasonable, minimal force in a good-faith effort to restore order and maintain discipline, not maliciously and sadistically for the purpose of causing harm; and (3) all defendants are entitled to qualified immunity. ECF No. 48-1.  With respect to plaintiff's suggestion that defendants were required to handcuff him in the front due to his medical waist chain chrono, defendants assert that custody officers are not obligated to observe special cuffing chronos when they are dealing with noncompliant inmates or dangerous situations. When Officer Herrera grabbed plaintiff's left arm to bring it behind his back to handcuff him, plaintiff moved his upper body forward in a sudden movement causing the defendants to reasonably believe plaintiff was resisting application of handcuffs. Id. at 8.  Officers Herrera, Enriquez, and McCrary then reasonably responded to their perception of an imminent threat by moving plaintiff away from the service counter and placing him on the ground face down in a prone position. Id.  While plaintiff was on the ground, Officer Nappen helped the other defendants hold plaintiff's upper body in place by placing his hands on plaintiff's back. Id. Officer Herrera made an announcement via institutional radio that there was a resistive inmate in the library. Id.  Defendants held plaintiff's body in place for a short period until responding staff

5

(non-defendants Sergeant Smith and Correctional Officers Ortega and Hart) arrived, applied handcuffs and leg restraints to plaintiff, and led him out of the library and into a holding cell. Id. at 8-9.

After the incident, plaintiff was evaluated by medical staff who noted some swelling and abrasions on his right wrist, as well as an abrasion or swelling on the left knee. Id. at 9. Later that day, plaintiff reported numbness in his right hand, which medical staff also documented. Id. An x-ray the following day showed no acute bone abnormalities in plaintiff's right wrist or hands. Id. Plaintiff also denied experiencing any mental health symptoms after the incident. Id. On this record, defendants allege plaintiff's resulting injuries were minimal and their use of force was reasonable. Id. at 13-18.

In their reply brief, defendants reiterate that non-defendant Officer Ortega, rather than Officer Herrera, applied handcuffs to plaintiff. ECF No. 53 at 5-6 (citing ECF No. 53-2 (Ortega Decl. ¶ 4)). Defendants argue this fact undermines plaintiff's contention that defendants used excessive force while plaintiff was lying face-down, restrained in handcuffs. Id. Finally, defendants dispute plaintiff's description of the outcome of his Third Level grievance, because "the Third Level did not declare that Defendants used excessive force in violation of CDCR policy" but simply amended the Confidential Supplement to the Appeal. Id. at 8. In support of their motion for summary judgment, defendants have submitted declarations from Deputy Attorney General MacFarlane, as well as CDCR Staff Members Tony Diaz, A. Herrera, E. Enriquez, B. McCrary, R. Nappen, A. Turner, G. Smith, and J. Ortega. ECF Nos. 48-4-11; 53-2.

C. Plaintiff's Opposition

It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as

"limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. at 1364 n.4 (citation omitted).

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, though plaintiff has largely complied with the rules of procedure, the court will consider the record before it in its entirety. However, only those assertions in the motion and opposition which have evidentiary support in the record will be considered.

Plaintiff opposes defendants' motion for summary judgment on the grounds that defendants' use of force violated his rights under the Eighth Amendment. ECF No. 52. Plaintiff reiterates his version of the defendants' use of force from his amended complaint, including that defendants "slammed" plaintiff to the floor, Officer Herrera "placed Plaintiff in handcuffs," Officer Herrera "kneed Plaintiff in his injured left shoulder multiple times" and bent plaintiff's wrists over the handcuffs, and Officer McCrary twisted plaintiff's right leg "trying to break it." Id. at 4, 6-7. Plaintiff disputes defendants' assertion that non-defendant Officer Ortega placed plaintiff in handcuffs, and points to Officer Hart's Crime/Incident Report which noted that when he arrived on the scene plaintiff was already face-down, no longer resisting, and had already been placed in handcuffs. Id. at 7. Plaintiff contends that "there was no need for defendants Herrera, McCrary, Nappen, and Enriquez to use excessive force against plaintiff when he was already in handcuffs" and therefore defendants were acting maliciously and sadistically to cause harm. Id. at 11. Furthermore, the severity of plaintiff's injuries does not determine whether the force used by defendants was excessive. Id. Finally, plaintiff alleges that defendants are not entitled to qualified immunity. Id. at 12-13.

IV.     Undisputed Material Facts

Both parties have submitted separate Statements of Undisputed Facts. ECF Nos. 48-2

(Defendants' Statement of Undisputed Facts ("DSUF"), 52-2 (Plaintiff's Statement of Undisputed Facts ("PSUF")).  Defendants subsequently filed a Compendium of the Parties' Statements of Undisputed Facts ("CSUF") (ECF No. 53-1), as an attachment to their reply brief (ECF No. 53).  The following material facts are undisputed except as noted.

### A.    Background Facts

At the time relevant to the complaint, plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at the California State Prison (CSP)-Sacramento.  ECF No. 53-1 at 2 (CSUF Nos. 1-2).  Defendants A. Herrera, R. Nappen, B. McCrary, and E. Enriquez were all employed as correctional officers at CSP-Sacramento.  Id. at 3 (CSUF No. 4).  Plaintiff was housed in the C Facility, which is a general population yard at security level IV, the highest security level at CDCR institutions.  Id. at 4 (CSUF No. 6).

### B.    Initial Events in the Library

On November 19, 2019, shortly before 1:00 p.m., plaintiff went to the C Facility law library to conduct legal research for a pending case.  Id. (CSUF No. 7).  Although the senior law librarian, Ms. Turner, does not recall her specific interaction with plaintiff that day (ECF No. 48-10 at 2 (Turner Decl. ¶¶ 7-8)), plaintiff testified during his deposition that he and Ms. Turner disagreed regarding a request he made for copies of his legal documents (ECF No. 48-4 at 12 (Pl. Dep. at 21:19-24)).  Ms. Turner wanted to take plaintiff's legal documents to her supervisor for approval to make plaintiff's requested copies, but plaintiff refused to allow Ms. Turner to take his documents to another yard.  ECF No. 48-4 at 10 (Pl. Dep. at 17:14-24).  Plaintiff testified, "I said to her no, I'm not going to let you take my documents to another yard just to be approved.  You can call your boss to come over or you can call on the phone and get approval on the phone.  I'm not going to let you go read my – take my – go read my paperwork...." Id. (Pl. Dep. at 17:18-23).  According to plaintiff, he and Ms. Turner "got into a debate about that" and she said, "that's rude. She had it." Id. at 12 (Pl. Dep. at 21:21-24).

Ms. Turner called custody – specifically Officer Enriquez – to request that correctional officers respond to the law library and remove plaintiff, who she described as being disruptive.  ECF No. 48-7 at 2 (Enriquez Decl. ¶ 6).  Officer Enriquez informed the other defendants, Officers

8

Herrera, McCrary, and Nappen, that plaintiff was being disruptive and the librarian needed plaintiff removed from the library.  Id.  Based on Ms. Turner's report, defendants were prepared for the possibility that plaintiff may be agitated, argumentative, resistive and/or escalate his behavior.  Id. (Enriquez Decl. ¶ 6); ECF Nos. 48-8 at 2 (Mcrary Decl. ¶ 6); 48-9 at 2 (Nappan Decl. ¶ 6); 48-6 at 2-3 (Herrera Decl. ¶ 7).  Defendants each assert that when they initially responded to Ms. Turner's call, their intention was to de-escalate the situation and escort plaintiff from the library unrestrained.  ECF Nos. 48-7 at 2 (Enriquez Decl. ¶ 8); 48-8 at 2 (Mcrary Decl. ¶ 8); 48-9 at 2 (Nappan Decl. ¶ 8); 48-6 at 3 (Herrera Decl. ¶ 9).

> C.    Defendant Officers' Actions

When the four defendants arrived at the law library, they walked directly to plaintiff and Officer Herrera told him to gather his belongings and leave the law library because Ms. Turner "wants you to leave."  ECF No. 48-4 at 13 (Pl. Dep. at 21:21-24); 48-6 at 3 (Herrera Decl. ¶ 8).  Plaintiff did not comply with Officer Herrera's instruction but responded that he needed to get his legal papers from Ms. Turner.  ECF No. 53-1 at 7 (CSUF No. 20).  Plaintiff walked away from the library exit toward the service counter.  ECF No. 53-1 at 8 (CSUF No. 21).  Officer Herrera allowed plaintiff time to collect his legal papers.  ECF No. 48-7 at 2 (Enriquez Decl. ¶ 8).  Officer Herrera then directed plaintiff a second time to leave the law library, and that he would need to be escorted out in handcuffs if he did not leave.  ECF No. 53-1 (CSUF No. 22).  Plaintiff failed to comply a second time and remained at the service counter, insisting that he needed to get his legal papers from Ms. Turner.  Id. at 8-9 (CSUF Nos. 23-24).  Based on plaintiff's refusal to comply with his two verbal orders, Officer Herrera ordered plaintiff to turn around and place his hands behind his back to submit to handcuffs, or as plaintiff testified, "Turn around and cuff up."  Id. at 9 (CSUF No. 25); ECF No. 52-2 at 3 (PSUF No. 10); ECF No. 48-4 at 11 (Pl. Dep. at 18:12-13).  Officers Herrera and Enriquez then approached plaintiff at the service counter.  At this point, the parties' accounts of events diverge to some degree.

> 1.    Plaintiff's Version

Plaintiff turned around as instructed and put his hands at his sides, but also asked Officer Herrera to be handcuffed in the front because he had a permanent waist chain chrono.  ECF No.

9

52-2 at 3 (PSUF No. 11); ECF No. 48-4 at 11 (Pl. Dep. at 18:12-21). Plaintiff asserts that he could not put his hands behind his back because of a past rotator cuff surgery. ECF No. 48-4 at 16 (Pl. Dep. at 27:19-25). Officer Herrera does not recall whether plaintiff made this request. See ECF Nos. 48-6 at 3 (Herrera Decl. ¶ 10). However, defendants "will accept that Plaintiff asked Officer Herrera to cuff him in the front or use a waist chain as a disputed fact for purposes of their motion for summary judgment." See ECF No. 48-1 at 7, fn. 2; 53-1 at 30.[2]

Plaintiff alleges that after he asked Officer Herrera to handcuff him in the front and placed his hands at his sides, Officer Herrera and the other defendants grabbed plaintiff, twisted his left hand behind his back, put him in a choke hold, and "slammed him to the floor." ECF No. 52-2 at 3 (PSUF No. 12); ECF No. 48-4 at 11, 17 (Pl. Dep. at 18:23-25; 28:14-22). Plaintiff alleges that while he was on the floor, defendants turned him onto his stomach and Officer Herrera "placed both of plaintiff's hands behind his back and placed plaintiff in handcuffs." ECF No. 52-2 (PSUF No. 13). While plaintiff was on the floor in handcuffs, plaintiff alleges that Officer Herrera "kneed plaintiff multiple times in his injur[ed] left shoulder and he ben[t] plaintiff's hands over the [handcuff] trying to break plaintiff's wrists while defendant McCrary was twisting plaintiff's right leg trying to break it." Id. at 3 (PSUF No. 14). Plaintiff asserts that an incident report completed by non-defendant Officer Hart, who later arrived on the scene, corroborates his account of events because it provides that when Officer Hart arrived in the library "plaintiff was already in handcuffs" and no longer resisting. Id. at 4 (PSUF No. 16); ECF No. 52 at 28 (Officer Hart's Incident Report). Plaintiff asserts that nondefendant Officer Ortega, who later escorted plaintiff to the holding cell with Officer Hart after relieving the defendants, "did not [restrain] plaintiff in handcuffs" as Officer Ortega alleged in his declaration. Id. (PSUF No. 17).

2.    Defendants' Version

Officer Herrera asserts that regardless of whether plaintiff asked to be handcuffed in the front, he would not have granted plaintiff's request because of plaintiff's noncompliant,

---

[2] Plaintiff attached documentation to his opposition brief reflecting his "special cuffing" accommodation due to "left high grade [rotator cuff] surgery" in March 2017. ECF No. 52 at 18-19, 24-26 (medical records reflecting plaintiff's March 2017 rotator cuff surgery on his left shoulder).

argumentative, and agitated behavior in the library.  ECF No. 48-6 at 3 (Herrera Decl. ¶ 10).  Officer Herrera asserts that custody staff will only honor a special cuffing chrono for a waist chain when an inmate is being compliant and cooperative, not disruptive or noncompliant.[3]  Id.  When Officer Herrera grabbed plaintiff's left hand to put it in handcuffs, plaintiff moved his upper body forward in a sudden motion, jerking his hand away from Officer Herrera.  ECF No. 53-1 at 9 (CSUF No. 26); ECF No. 48-6 at 4 (Herrera Decl. ¶ 11).[4]  Officer McCrary states that he observed plaintiff "suddenly [move] his body away from Officer Herrera" and "pull his left hand away from Officer Herrera and arch his back."  ECF No. 48-8 at 3 (McCrary Decl. ¶ 9).  Officer Herrera, knowing that plaintiff had already caused a significant enough disruption to cause the librarian to summon custody for assistance and believing that plaintiff was now physically resisting handcuffs, determined that plaintiff posed an imminent threat to the safety of staff and others in the library.  ECF No. 48-6 at 4 (Herrera Decl. ¶ 11).  Officer Herrera asserts that he determined immediate force was required to place plaintiff on the ground in a prone position to apply handcuffs and avoid a potentially dangerous escalation of the situation.  ECF No. 53-1 at 10 (CSUF No. 30); ECF No. 48-6 at 4 (Herrera Decl. ¶ 12).

Officer Herrera asserts that once plaintiff posed an imminent threat due to his noncompliance, defendants were authorized to use immediate force but did not hit, kick, or strike plaintiff in any way.  ECF No. 48-6 (Herrera Decl. ¶ 14).  Similarly, each of the defendants assert that they had no ill will or malice toward plaintiff and their sole intent in their minimal use of force was to safely effect custody of plaintiff to address the imminent threat he posed to others.  Id. (Herrera Decl. ¶ 13); ECF Nos. 48-7 at 4 (Enriquez ¶ 11); 48-8 at 4 (McCrary Decl. ¶ 11); 48-9 at 4 (Nappen Decl. ¶ 11).

Officer Herrera initiated gaining control of plaintiff while Officers Enriquez and McCrary assisted him by using their hands on plaintiff's arms and shoulders to move plaintiff away from

---

[3]  Furthermore, plaintiff was not wearing a mobility vest or anything indicating he had mobility issues at the time that would have alerted defendants to a medical condition.  Id.

[4]  It is undisputed that plaintiff moved suddenly while Officer Herrara was trying to apply the handcuffs, although plaintiff testified this was an involuntary response relating to pain in his shoulder.  ECF No. 53-1 at 9-10 (CSUF Nos. 27-28); ECF No. 48-4 at 10 (Pl. Dep. at 17:14-24, 29:2-22; 48:12-49:10).

11

the service counter and place him on the ground in a prone position. ECF No. 53-1 at 12-13 (CSUF Nos. 31, 35-37); ECF No. 48-7 at 3 (Enriquez ¶ 10).[5] With his hands on plaintiff's shoulders and wrists, Officer Herrera stated he "guided Plaintiff away from the service counter and to the ground using my body weight and his momentum. Once Plaintiff was on the ground, I was able to place both hands behind his back. I freed up a hand by placing a knee on Plaintiff's lower back and made an immediate announcement via institutional radio to announce a resistive inmate in the library." ECF No. 48-6 at 4 (Herrera Decl. ¶ 12). Contrary to plaintiff's assertion that while he was on the floor, Officer Herrera "placed both of plaintiff's hands behind his back and placed plaintiff in handcuffs" (ECF No. 52-2 at 3 (PSUF ¶ 13)), Officer Herrera denies ever applying handcuffs to plaintiff and asserts that all his attempts to do so were unsuccessful. ECF No. 48-6 at 4 (Herrera Decl. ¶ 12); ECF No. 52 at 16 (Officer Herrera's Incident Report providing that he "continued to attempt to handcuff GIBBS without success" before responding staff arrived and another officer relieved him).

Additional staff arrived "very quickly" in response to Officer Herrera's radio announcement, to relieve defendants who were holding plaintiff's body in place on the floor. ECF No. 48-6 at 5 (Herrera Decl. ¶ 12); ECF No. 53-1 (CSUF No. 41). Nondefendant Correctional Sergeant Smith reports that when he responded to the library, he saw Officers Herrera, McCrary, Enriquez, and Nappen kneeling next to plaintiff holding him firmly in place in a prone position on the ground, but they did not appear to be using force. ECF No. 48-11 at 2 (Smith Decl. ¶ 4). Plaintiff "appeared agitated and loud but did not appear to be actively resisting." Id. Nondefendant Officer Ortega asserts that he relieved Officer Enriquez and placed plaintiff in handcuffs. ECF No. 53-2 (Ortega Decl. ¶ 4); ECF No. 48-11 at 2 (Smith Decl. ¶ 6). At Sergeant Smith's request, another responding staff member, Officer Struve, brought and applied leg restraints around plaintiff's ankles. ECF No. 48-11 at 2 (Smith Decl. ¶ 6). Officer Hart's Incident Report reflects that when he responded to the library, he observed Officers

---

[5] Officer Nappen did not take part in defendants' application of force to gain control of plaintiff but placed his hands on plaintiff's upper and lower back to hold plaintiff in place once he was on the floor. ECF No. 53-1 (CSUF No. 38); ECF No. 48-9 at 3 (Nappen Decl. ¶ 10).

Herrera, McCrary and Enriquez kneeling down next to plaintiff and "[a]t this time GIBBS was not resistive and had already been placed in handcuffs." ECF No. 52 at 28. Officer Hart relieved Officer Herrara of his position on the left side of plaintiff, while Officer Ortega relieved Officer Enriquez of his position on the right side of plaintiff. Id. Officer Ortega and non-defendant Officer Hart then "assisted Gibbs to his feet and escorted him out of the library and, after following necessary protocols, placed Gibbs in a holding cell" without further incident. ECF No. 53-2 (Ortega Decl. ¶ 4), Ex. A (Ortega's Incident Report); ECF No. 48-6 at 5 (Herrera Decl. ¶ 12). The entire incident lasted approximately five minutes from the time defendants entered the library until plaintiff was escorted out by the non-defendant officers. ECF No. 53-1 at 19 (CSUF No. 51).

        D.      Medical Treatment Following Use of Force

        Plaintiff alleges in the operative complaint that "as a result of the defendants using unjustifiable excess force against plaintiff, plaintiff suffered serious injuries to both of his knees, both of his wrists, and to his left shoulder." ECF No. 35 at 8. After the incident, plaintiff was evaluated by the medical team and reported some pain in his left shoulder and right wrist, and medical staff noted some swelling and abrasions on the right wrist and left knee. Id. at 20 (CSUF No. 52); ECF No. 52 at 21-22; ECF No. 48-4 (Macfarlane Decl.), Ex. B (Medical Report of Injury). Later that day, plaintiff also reported numbness in his right hand. Id. at 20 (CSUF No. 53).

        The next day, November 20, 2019, plaintiff was evaluated by a medical doctor and the only injury he reported was pain in his right wrist and hand. Id., Ex. D; ECF No. 53-1 at 21 (CSUF No. 59). An x-ray of plaintiff's right hand and wrist taken on November 21was unremarkable, showing no fractures or abnormalities. ECF No. 48-4 (Macfarlane Decl.), Exs. C, E; ECF No. 53-1 at 21 (CSUF Nos. 60-61).

        E.  Plaintiff's Mental State

        In his complaint, plaintiff also alleges that he "suffered from mental and emotional injuries," such as feeling "constantly in fear for his safety and having excessive force used against him by custody" and "anxiety attacks" when he is in custody's presence. ECF No. 35 at 8.

Plaintiff's mental health records indicate that plaintiff denied any mental health symptoms after the November 19, 2019 incident. ECF No. 53-1 at 22 (CSUF Nos. 62, 64). A mental health clinician attempted to counsel plaintiff on November 19, 2019 while he was in the holding cell, and she noted there had been several recent requests for a psychological consult the week of the incident due to plaintiff's "increased agitation and anger." ECF No. 48-4 (Macfarlane Decl.), Ex. D; ECF No. 53-1 (CSUF Nos. 54-55). Plaintiff had refused confidential mental health treatment sessions prior to the incident, and he similarly refused the confidential session with the mental health clinician after the incident. ECF No. 48-4 (Macfarlane Decl.), Ex. D; ECF No. 53-1 (CSUF Nos. 56-57). Plaintiff was designated to receive the Correctional Clinical Case Management System ("CCCMS") level of care, including a crisis bed, after the incident but he disagreed with this designation. ECF No. 48-4 (Macfarlane Decl.), Ex. D; ECF No. 53-1 (CSUF Nos. 54-55). On November 21, 2019, plaintiff denied any mental health symptoms, declined mental health services, and he was discharged from the CCCMS crisis bed back to general population. ECF No. 48-4 (Macfarlane Decl.), Ex. D; ECF No. 53-1 at 22 (CSUF No. 64).

F. Disciplinary Proceedings and Plaintiff's Grievance

Officer Herrera wrote plaintiff up for violating prison rules and regulations for "Behavior which could lead to violence." ECF No. 53-2 at 6 (Herrera Decl. ¶ 12); ECF No. 48-4 at 70-73 (Macfarlane Decl.), Ex. F; ECF No. 53-1 at 22 (CSUF No. 65). Following an internal review, plaintiff was found guilty of this charge. ECF No. 48-4 at 70-73 (Macfarlane Decl.), Ex. F; ECF No. 53-1 at 22 (CSUF No. 65).

Plaintiff filed a grievance alleging staff misconduct and excessive force due to defendants ignoring his waist chain chrono, and defendants twisting his arm behind his back and attempting to break his wrist and leg. ECF Nos. 48-5 at 5 (Diaz Decl. ¶ 16); 48-4 at 75-87 (Macfarlane Decl.), Ex. G. Defendants' use of force during the incident was reviewed at multiple levels. At the second level of review, plaintiff and defendants were interviewed and the institution found that "Staff did not violate CDCR policy with respect to the issues raised." ECF Nos. 48-5 at 6 (Diaz Decl. ¶ 21); 48-4 at 75 (Macfarlane Decl.), Ex. G. Although the Third Level Review Appeals Examiner granted plaintiff's appeal in part because the institution may not have reviewed

14

plaintiff's allegation that he brought his waist chain chrono to the staff's attention prior to the use of force, upon review, the institution did not change its prior finding that defendants' use of force did not violate CDCR policy.  ECF Nos. 48-5 at 6 (Diaz Decl. ¶ 21-22); 48-4 at 81-82, 87 (Macfarlane Decl.), Ex. G.  The institution amended the Confidential Supplement to Appeal, referred to as Attachment C, around September 14, 2020, and filled in the modification order to confirm completion.  ECF No. 48-4 at 87 (Macfarlane Decl.), Ex. G.

V.    Discussion

A.  Eighth Amendment Standards

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

When determining whether the force was excessive, the court looks to "the extent of injury suffered by an inmate . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. at 7 (quoting Whitley, 475 U.S. at 321).  The extent of injury suffered by the plaintiff may indicate the amount of force applied.  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).

While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9 (citing Whitley, 475 U.S. at 327).

> [However,] not every malevolent touch by a prison guard gives rise
> to a federal cause of action.  The Eighth Amendment's prohibition of
> 'cruel and unusual' punishments necessarily excludes from

15

> constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.  An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.  Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."

Wilkins, 559 U.S. at 37-38 (internal citations and some internal quotation marks omitted).

Excessive force cases often turn on credibility determinations, and "'[the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom.'"  Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (alteration in original) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).  Therefore, "'summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'"  Id. (quoting Santos, 287 F.3d at 853).  The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."  Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citations omitted).

   B.  Application of *Hudson* Factors

      1.  Injury Suffered by Plaintiff

The nature and extent of plaintiff's injury, while not dispositive, must be considered in determining whether the evidence supports a reasonable inference that defendants' alleged use of force was motivated by malicious or sadistic intent.  Hudson, 503 U.S. at 7.  "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  Wilkins, 559 U.S. at 38.  "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."  Hudson, 503 U.S. at 7.

Plaintiff alleges that Officer Herrera and the other defendants grabbed plaintiff, twisted his left hand behind his back, put him in a choke hold and "slammed him to the floor."  ECF No. 52-2 at 3 (PSUF No. 12); ECF No. 48-4 at 11, 17 (Pl. Dep. at 18:23-25; 28:14-22).  Plaintiff alleges that while he was on the floor and already handcuffed, Officer Herrera "kneed plaintiff multiple times in his injur[ed] left shoulder and he ben[t] plaintiff's hands over the [handcuff] trying to

16

break plaintiff's wrists while defendant McCrary was twisting plaintiff's right leg trying to break it." ECF No. 52-2 at 3 (PSUF No. 14).  In his complaint, plaintiff alleges "serious injuries to both of his knees, both of his wrists, and to his left shoulder." ECF No. 35 at 8.

However, the undisputed medical evidence in the record reflects that after the incident, medical staff noted only some swelling and abrasions on plaintiff's right wrist, and an abrasion or swelling on the left knee. ECF No. 48-4 (Macfarlane Decl.), Ex. B (Medical Report of Injury). Later that day, plaintiff also reported numbness in his right hand. Id. By the next day, the only injury plaintiff reported was pain in his right wrist and hand. Id., Ex. D. An x-ray of his right hand and wrist on November 21, 2019 was unremarkable, showing no fractures or abnormalities. Id., Exs. C. E. Although plaintiff also alleges emotional harm and anxiety when he is around custody officers due to defendants' use of force, his mental health records reflect his denial of any mental health symptoms and rejection of confidential mental health treatment after the incident. ECF No. 48-4 (Macfarlane Decl.), Ex. D; ECF No. 53-1 at 20-22 (CSUF Nos. 54-57, 64). He also asked to be removed as a participant of CDCR's mental health delivery services. ECF No. 53-1 at 22 (CSUF Nos. 63-64).

Taken in the light most favorable to plaintiff, the evidence shows that he suffered some minor injuries that would support his claim that defendants used physical force to subdue and effect custody of plaintiff. The fact that plaintiff suffered only minor physical injuries, i.e., some short-term pain and swelling to his right hand and wrist and a superficial abrasion on his left knee, and consistently denied all mental health symptoms after the incident, weighs in favor of defendants.

### 2. Need for Application of Force

An inmate's refusal to comply with orders may present a threat to the safety and security of a prison. Lewis v. Downey, 581 F.3d 467, 476 (7th Cir. 2009); Whitley, 475 U.S. at 320-22; Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979).

> Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them . . . . Inmates are and must be required to obey orders. When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such

17

> refusal and denial of authority places the staff and other inmates in danger.

Lewis, 581 F.3d at 476 (alterations in original) (quoting Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984)).  However, "[n]ot every instance of inmate resistance justifies the use of force." Treats v. Morgan, 308 F.3d 868, 873 (8th Cir. 2002) (citing Hickey v. Reeder, 12 F.3d 754, 759 (8th Cir. 1993)).

Both parties agree that plaintiff caused a disturbance in the law library after he got into a disagreement with the law librarian.  ECF No. 48-10 at 2 (Turner Decl. ¶¶ 7-8); ECF No. 48-4 at 12 (Pl. Dep. at 17:14-24, 21:19-24).  It is undisputed that even after the defendants arrived to remove plaintiff at the librarian's request because she considered plaintiff's behavior to be "rude" and "disruptive," plaintiff disregarded two verbal commands from Officer Herrera to leave the library and he remained at the service counter.  ECF No. 53-1 at 8-9 (CSUF No. 22-24).  Based on plaintiff's refusal to comply with his two verbal orders, Officer Herrera ordered plaintiff to turn around, place his hands behind his back, and submit to handcuffs.  Id. at 9 (CSUF No. 25); ECF No. 52-2 at 3 (PSUF No. 10); ECF No. 48-4 at 11 (Pl. Dep. at 18:12-13).  It is also undisputed that when Officer Herrera tried to apply handcuffs to plaintiff, plaintiff moved suddenly away from Officer Herrera, pulling his arm away, thereby evading application of the handcuffs.  ECF No. 53-1 at 9-10 (CSUF Nos. 27-28); ECF No. 48-4 at 10 (Pl. Dep. at 17:14-24, 29:2-22; 48:12-49:10).  It was only at this point in time that Officer Herrera and the other defendants determined that use of physical force was needed to gain control of plaintiff, based on his noncompliance and apparent physical resistance to the application of handcuffs.

Plaintiff alleges that he suddenly jerked his arm away from Officer Herrera – thereby evading application of the handcuffs – due to shoulder pain from a prior rotator cuff injury that was the basis for his special cuffing chrono.  ECF No. 48-4 at 10 (Pl. Dep. at 17:14-24, 29:2-22; 48:12-49:10).  Plaintiff further asserts that defendants ignored his verbal request to be handcuffed in the front.  ECF No. 52-2 at 3 (PSUF No. 11); ECF No. 48-4 at 11 (Pl. Dep. at 18:12-21).

Even taking plaintiff's version of events as true, the undisputed evidence in the record reflects that custody staff will only honor a special cuffing chrono for an inmate to be handcuffed

18

in front when an inmate is being compliant and cooperative, not disruptive or noncompliant. ECF No. 48-6 at 3 (Herrera Decl. ¶ 10); ECF No. 53-1 at 27 (CSUF No. 84-88); ECF No. 48-5 at 9 (Diaz Decl. ¶ 34). A special cuffing chrono is a medical request relating to the use of restraints. ECF No. 53-1 at 27-28 (CSUF Nos. 84); ECF No. 48-5 at 9 (Diaz Decl. ¶ 33). Because of safety concerns, CDCR does not authorize any inmate to be handcuffed in the front without additional use of a waist chain to prevent an inmate from retaining a full range of motion. ECF No. 53-1 at 26-27 (CSUF Nos. 80-81, 83); ECF No. 48-5 at 8-9 (Diaz Decl. ¶ 32). Application of a waist chain, however, cannot be completed unless the inmate being placed in the restraint is a willing participant. ECF No. 53-1 at 28 (CSUF Nos. 85); ECF No. 48-5 at 9 (Diaz Decl. ¶ 34). As a result, waist chains are not used in situations where an inmate is being uncooperative, noncompliant, resistive, or presenting an imminent threat. ECF No. 53-1 at 28 (CSUF No. 86); ECF No. 48-5 at 9 (Diaz Decl. ¶ 34).

As discussed above, plaintiff does not dispute that his own behavior in the library preceding Officer Herrera's attempts to handcuff him reflected neither compliance nor cooperation with the defendants' verbal orders. After causing a disturbance with the law librarian and defying several verbal orders from the correctional officers to leave the law library, plaintiff admits that he physically jerked his arm away when Officer Herrera attempted to apply the handcuffs. Under these circumstances, some force was arguably necessary to bring plaintiff into compliance with Officer Herrera's orders to "cuff up" and leave the law library. This factor therefore also tips in defendants' favor.

### 3. Relationship Between Need for Force and Amount of Force Used

In determining whether there has been an Eighth Amendment violation, the standard is "malicious and sadistic force, not merely objectively unreasonable force." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002); Hudson, 503 U.S. at 9 (not every malevolent touch gives rise to an Eighth Amendment claim). Even in instances where force is justified, the use of force may still violate the Eighth Amendment if it is disproportional to the need. Hoptowit v. Ray, 682 F.2d 1237, 1251 (9th Cir. 1982) ("[G]uards may use force only in proportion to the need in each situation."); Covington v. Fairman, 123 F. App'x 738, 740 (9th Cir. 2004) (finding that, if true,

19

under plaintiff's version of events, "the beating was out of proportion to the officers' legitimate need to end the nonviolent 'boarding up' incident and out of proportion to Plaintiff's resistance" and "amounted to a wanton beating in violation of the Eighth Amendment").

Plaintiff alleges that after he evaded Officer's Herrera's grasp when he tried to apply the handcuffs, Officer Herrera and the other defendants grabbed plaintiff, twisted his left hand behind his back, put him in a choke hold and "slammed him to the floor." ECF No. 52-2 at 3 (PSUF No. 12); ECF No. 48-4 at 11, 17 (Pl. Dep. at 18:23-25; 28:14-22). Plaintiff further alleges that while he was on the floor, defendants turned him onto his stomach and Officer Herrera "placed both of plaintiff's hands behind his back and placed plaintiff in handcuffs." Id. (PSUF No. 13). While plaintiff was on the floor restrained in handcuffs, Officer Herrera "kneed plaintiff multiple times in his injur[ed] left shoulder and he ben[t] plaintiff's hands over the [handcuff] trying to break plaintiff's wrists while defendant McCrary was twisting plaintiff's right leg trying to break it." ECF No. 52-2 at 3 (PSUF No. 14). Plaintiff alleges that once he was on the floor restrained in handcuffs, he could no longer present an imminent threat to defendants and therefore defendants were acting maliciously and sadistically to cause harm. ECF No. 52 at 11.[6]

If plaintiff's version of events is taken as true, then defendants' conduct in bending his hands around the handcuffs, twisting his leg, or kneeing him in the shoulder once he was subdued in handcuffs on the floor may out of proportion to plaintiff's resistance and therefore objectively unreasonable. However, a finding that defendants used objectively unreasonable force is insufficient to state a claim under the Eighth Amendment. To survive summary judgment, plaintiff must identify evidence which could – if believed – support a jury finding that defendants' conduct was malicious and sadistic for the purpose of causing harm. Hudson, 503

---

[6] As noted above, defendants deny that Officer Herrera ever successfully applied handcuffs to plaintiff due to plaintiff's active and ongoing resistance. ECF No. 48-6 at 4 (Herrera Decl. ¶ 12); ECF No. 52 at 16 (Officer Herrera's Incident Report providing that he "continued to attempt to handcuff GIBBS without success" before responding staff arrived). Non-defendant Officer Ortega asserts in his declaration that he applied handcuffs when he arrived on the scene to relieve the defendants. ECF No. 53-2 (Ortega Decl. ¶ 4); ECF No. 48-11 at 2 (Smith Decl. ¶ 6). Similarly, although Officer Hart's Incident Report states that plaintiff was already in handcuffs when he arrived, Officer Hart's report did not indicate whether he arrived after Office Ortega or specify which correctional officer applied the handcuffs. ECF No. 52 at 28.

U.S. at 7.  It is undisputed that the entire incident, from the time defendants entered the library until plaintiff was escorted out by nondefendant officers, took approximately five minutes.  ECF No. 53-1 at 19 (CSUF No. 50).  Furthermore, by the time the nondefendant correctional officers arrived in response to Officer Herrera's radio announcement, defendants were holding plaintiff in place on the floor but no longer applying force as plaintiff was no longer actively resisting.  ECF No. 53-1 at 16 (CSUF Nos. 42-43).

Plaintiff makes the conclusory assertion that defendants intended to break his wrists or leg.  He has not, however, provided any direct or circumstantial evidence that defendants acted with malicious or sadistic intent for the very purpose of causing harm and were not attempting to gain control of plaintiff's body, stop his active resistance, and effect custody.  On this record, even if the amount of force actually applied by defendants to gain control of plaintiff's body and stop his resistance was objectively unreasonably, a jury would be unable to find that defendants were motivated by malicious or sadistic intent, as required by the Eighth Amendment.

### 4.  Threat "Reasonably Perceived" by Defendants

The fourth Hudson factor considers "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them."  Whitley, 475 U.S. at 321.  In weighing this factor, courts should be mindful that "in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used."  Id. at 320.  However, "the absence of an emergency may be probative of whether the force was indeed inflicted maliciously or sadistically."  Jordan v. Gardner, 986 F.2d 1521, 1528 n.7 (9th Cir. 1993) (citing Hudson, 503 U.S. at 7 (court should look at need for force and reasonably perceived threat)).

Defendants reasonably perceived that plaintiff's noncompliant behavior required the application of force.  First, defendants were aware that plaintiff's behavior with the librarian was sufficiently rude and disruptive that she requested their help removing him from the library.  ECF No. 53-1 at 6 (CSUF Nos. 13-16).  Second, when defendants arrived at the library and Officer

21

Herrera ordered plaintiff to gather his belongings and leave, plaintiff defied this order and instead moved away from the library exit to the service counter. Id. at 7-8 (CSUF Nos. 20-21). When Officer Herrera issued a second order for plaintiff to leave the library, warning that plaintiff would otherwise need to be escorted out in handcuffs, plaintiff refused to comply a second time and remained at the service counter. Id. at 8-9 (CSUF Nos. 20-21). When Officer Herrera ordered plaintiff to turn around and attempted to apply handcuffs, plaintiff moved suddenly and jerked his arm away from Officer Ortega, evading application of handcuffs. Id. at 9-10 (CSUF Nos. 26-29). Even assuming that plaintiff's sudden movement was the result of shoulder pain, as plaintiff asserts, defendants reasonably perceived plaintiff's behavior as continued, active defiance that posed an imminent threat to their safety and the safety of others in the law library. ECF No. 53-1 at 10 (CSUF Nos. 30). Plaintiff had been behaving in an agitated and noncompliant manner, continued to be unrestrained, and could have continued to escalate his behavior in a manner that presented a danger to others present.

In these circumstances, defendants reasonably perceived plaintiff as posing an imminent threat to the defendants' safety, the safety of others, and facility security. This factor weighs in favor of defendants.

     5.  Efforts Made to Temper the Severity of a Forceful Response

Defendants assert that they utilized multiple de-escalation tactics prior to using force to subdue plaintiff. ECF No. 53-1 at 29 (CSUF No. 90). First, Officer Herrera maintained physical distance from plaintiff while providing repeated verbal commands, aka "verbal judo," to attempt to gain plaintiff's compliance. ECF No. 48-5 at 7 (Diaz Decl. ¶ 26). Second, the four correctional officers presented an organized and coordinated response, showing plaintiff that he was outnumbered to discourage plaintiff from disobeying lawful orders and help gain compliance without the need for use of force. Id. at 8 (Diaz Decl. ¶ 27). Third, only two of the four defendants approached plaintiff at the service counter while directing him to submit to the application of handcuffs to discourage an escalation of the conflict. Id. at 8 (Diaz Decl. ¶ 28). Fourth, defendants claim that they used the minimal amount of physical force to regain physical grasp of plaintiff – without presenting or using pepper spray or expandable batons – by guiding

22

plaintiff to the floor and placing his hands behind his back in a prone position without injury to his upper torso, head, or facial area.  Id. at 8 (Diaz Decl. ¶ 29).

In plaintiff's version of the facts, which must be taken as true for the purposes of summary judgment, plaintiff does not dispute defendants' use of the first three de-escalation techniques. Plaintiff does, however, dispute whether defendants used the minimal amount of force necessary to effect custody; he that argues defendants' use of physical force was excessive because Officer Herrera handcuffed him and therefore he could no longer present a threat to anyone's safety. Plaintiff does not assert that defendants displayed or threatened to use pepper spray, batons, or any other method to gain his cooperation and compliance.  It is also undisputed that immediately after the incident, medical staff noted only some swelling and abrasions on plaintiff's right wrist, and an abrasion or swelling on the left knee.  ECF No. 48-4 (Macfarlane Decl.), Ex. B (Medical Report of Injury).  By the next day, the only injury plaintiff reported to a doctor was pain in his right wrist and hand, which were unremarkable on x-ray.  Id., Exs. C, D, E.  Plaintiff's minimal physical injuries are consistent with a minimal application of physical force by defendants.

On this record, the evidence suggests that defendants tempered their use of force to effect custody and minimize physical harm to plaintiff, defendants, and others present in the law library. This factor weighs in favor of defendants.

C. Conclusion

As set forth above, when determining whether the force used by defendants was excessive under Eighth Amendment standards, the court must consider the extent of plaintiff's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Defendants have provided sworn declarations and expert testimony regarding each of these factors to show they used the minimal amount of physical force necessary to regain control of plaintiff and safely effect custody, given plaintiff's resistant and noncompliant behavior.  To withstand summary judgment, it is plaintiff's burden to establish genuine disputes of fact for trial.

////

As discussed above, plaintiff alleges Officer Herrera applied handcuffs while plaintiff was on the ground, kneed him multiple times in his left shoulder, and bent his hands over the handcuffs "trying to break plaintiff's wrists" while Officer McCrary twisted his right leg "trying to break it." ECF No. 52-2 at 3 (PSUF ¶¶ 13-14). In the absence of any other supporting evidence, plaintiff's conclusory allegation that defendants were acting maliciously and sadistically for the purpose of causing harm does not create a triable issue. See F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment.") (citation omitted). Defendants' use of force to subdue plaintiff was not trivial and, taking plaintiff's version of facts as true, may have been objectively unreasonable. Even so, plaintiff's allegation that he suffered "serious injuries to both of his knees, both of his wrists, and to his left shoulder," as well as "mental and emotional injuries" (ECF No. 35 at 8) are contradicted by the minimal nature and severity of his physical injuries documented in his medical records, plaintiff's consistent denial of any mental health symptoms following the incident, and the undisputed evidence that when responding officers arrived defendants were no longer applying force because plaintiff had stopped resisting. This uncontradicted evidence indicates that defendants' use of force, even if objectively unreasonable, was nevertheless intended to gain control and restrain plaintiff to effect custody rather than maliciously and sadistically for the purpose of causing harm. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

In sum, plaintiff's excessive force claim should not go to trial where the evidence shows only de minimis injuries and defendants, in a version of events to which plaintiff has effectively stipulated, reasonably perceived an imminent threat to their safety as well as the safety of others present in the library. Accordingly, defendants' motion for summary judgment should be granted.

D.  Qualified Immunity

Government officials are immune from civil damages "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533 U.S. 194, 201 (2001) overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially).  These questions may be addressed in the order most appropriate to "the circumstances in the particular case at hand."  Pearson, 555 U.S. at 236.  Thus, if a court decides that plaintiff's allegations do not support a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.  On the other hand, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court need not determine whether plaintiff's allegations support a statutory or constitutional violation.  Pearson, 555 U.S. at 236-42.

The court has established that, takin the evidence in the light most favorable to plaintiff, the allegations fail to demonstrate a violation of plaintiff's Eighth Amendment rights.  Therefore, it is unnecessary to reach the qualified immunity issue on these claims. The court therefore declines to do so.

VI.     Plain English Summary for Pro Se Litigant

The magistrate judge is recommending that defendants' motion for summary judgment be granted.  Even if a jury believed how painful you say it was to be cuffed behind your back and taken to the floor, and even if the officers took you to the floor more forcefully than was necessary or reasonable under the circumstances, the evidence could not support a verdict in your favor.  That is because defendants' conduct only violated the Eighth Amendment if their use of force was "malicious and sadistic for the purpose of causing harm."  Even though you think they

25

were trying to hurt you, there is no evidence showing that.  Instead, the evidence shows that defendants were trying to take control of you.  Even if they did so roughly, a jury could not find in your favor under the Eighth Amendment.  The district judge will make the final decision on this recommendation after considering any objections that you file.

VII.    Conclusion

Since plaintiff has failed to raise triable issues of material fact with respect to his Eighth Amendment claim, defendants' motion for summary judgement should be granted.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 48) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 12, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE